UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JONATHAN ERNESTO FLORES MARTINEZ (A 203-599-284),<br>Petitioner,<br>v.<br>WARDEN,<br>Respondent. | No. 1:26-cv-06481-DC-SCR<br><br>FINDINGS & RECOMMENDATIONS |

Petitioner is a federal immigration detainee who filed this habeas corpus action pursuant to 28 U.S.C. § 2241. This matter is referred to the undersigned by operation of Local Rule 302 and 28 U.S.C. § 636(b)(1). This is Petitioner's second habeas corpus petition.[1] For the following reasons, the undersigned finds that Petitioner's ongoing detention violates substantive due process and recommends that he be released.

## I. Factual and Procedural History

Petitioner, a citizen of El Salvador, applied for admission into the United States at the San Ysidro, California port of entry on July 26, 2019. Flores Martinez I, ECF No. 16 at 10. Officials with the Department of Homeland Security ("DHS") served Petitioner with a Notice to Appear ("NTA") charging him as inadmissible under 8 U.S.C. § 1182(a)(7)(A)(i)(I) and, per protocol in effect at the time, sent Petitioner to Mexico to await his court date. Id. at 10-11. When Petitioner

[1] Petitioner's first action is docketed as Flores Martinez v. Warden of the California City Detention Facility, et. al., No. 1:26-cv-00762-JLT-EGC (E.D. Cal. 2026) ("Flores Martinez I").

appeared at the port of entry again on December 17, 2019 for his scheduled hearing, he was informed that DHS had not filed the NTA with the immigration court, so his case did not appear on the court's docket. Id. at 11. On December 31, 2019, DHS placed Petitioner in expedited removal proceedings and transferred him to the Otay Mesa detention center. Id. After Petitioner demonstrated a credible fear of return to his native El Salvador, Immigration and Customs Enforcement ("ICE") placed him in removal proceedings and released him on parole on May 21, 2020. Flores Martinez I, ECF No. 17-1 at 7-8.

Over the next five years, Petitioner built a life in the United States. He received work authorization, a driver's license, and a social security number; worked at a car dealership; and paid taxes. ECF No. 1 at 3. He now has a wife and two U.S. citizen children, one of whom has autism. Flores Martinez I, ECF No. 17-1 at 18-25.

On December 13, 2022, the Fresno police department arrested Petitioner on suspicion of violating California Penal Code § 243(E)(1) (battery on a spouse). Flores Martinez I, ECF No. 16 at 16. The District Attorney declined to file charges. Flores Martinez I, ECF No. 17-1 at 11. As a result of the criminal arrest, ICE placed an ankle monitor on Petitioner, but removed it after Petitioner submitted a letter from the District Attorney indicating that no charges were filed. Flores Martinez I, ECF No. 17-1 at 2, 11. On June 20, 2025, ICE detained Petitioner when he appeared for a scheduled check-in. Petitioner remains in ICE custody today.

Petitioner filed his first petition for writ of habeas corpus on January 29, 2026, alleging that prolonged detention without an individualized bond hearing violated his rights under the Due Process Clause of the Fifth Amendment. Flores Martinez I, ECF No. 1. The respondents in that case claimed that ICE detained Petitioner as a result of violations of the terms of conditional release[2] and that a records check indicated that he had been involved with a criminal gang and charged with drug trafficking activities in El Salvador.[3] They also asserted that 8 U.S.C. §

[2] Respondent alleges that Petitioner missed two check-ins, one in September 2023 and another in May 2024. Flores Martinez I, ECF 16 at 16. Petitioner maintains that he complied with all conditions, but as to electronic check-in requirements at times had to submit photos a second time when they were not received on his first attempt. Flores Martinez I, ECF No. 17-1 at 2.

[3] Respondent submitted an FBI RAP sheet identifying Petitioner as a "subject of interest" based on possible charges in El Salvador in 2017 and 2018. Flores Martinez I, ECF No. 31-3 at 4-10.

1225(b)(1) governs Petitioner's detention because he remains an applicant for admission. Flores Martinez I, ECF No. 16. Petitioner's reply countered that § 1226(a) is the proper detention authority and that re-detention after prior release violated his Fifth Amendment due process rights. Flores Martinez I, ECF No. 17.

In Flores Martinez I, District Judge Thurston adopted the findings and recommendations of Magistrate Judge Guy Castillo, who found that § 1225(b) is not the proper detention authority and that due process requires that Petitioner be given a hearing in which the government bears the burden to demonstrate that detention is warranted. Flores Martinez I, ECF No. 20, 23. At a court-ordered bond hearing on June 9, 2026, an immigration judge ("IJ") found that Petitioner did not present a danger to the community, but did pose a risk of flight. Flores Martinez I, ECF No. 30. The IJ based this determination on a finding that Petitioner's likelihood of relief was speculative, as a prior humanitarian visa in Mexico gave rise to a possible firm resettlement bar. Id. Petitioner filed a motion to enforce the district court's judgment after the IJ's bond denial. Judge Thurston denied the motion. Flores Martinez I, ECF No. 25, 30.

On June 16, 2026, an IJ ordered Petitioner removed from the United States. ECF No. 5 at 27-32. Petitioner appealed the removal order and the bond denial to the Board of Immigration Appeals ("BIA"), where they remain pending. Id. at 34-35, 40-4. Petitioner also has a petition for U nonimmigrant status ("U visa") pending before U.S. Citizenship and Immigration Services ("USCIS"). ECF No. 1 at 4.

On August 14, 2026, Petitioner initiated the instant action by filing new petition for writ of habeas corpus. ECF No. 1. The new petition alleges that detention has become prolonged, there is no significant likelihood of removal in the reasonably foreseeable future, and continued detention no longer serves a legitimate government purpose. Id. Respondent's opposition reiterated the respondents' position in the earlier action that 8 U.S.C. § 1225(b)(1)(B)(ii) governs Petitioner's detention because he has never been admitted to the U.S., argued that the abuse of

---

The RAP sheet states that the subject has a tattoo on the outer surface of his right leg, which Petitioner denies having. Id., see also id. at ECF No. 30 at 06:30. Petitioner submitted a Criminal Record Certificate from the government of El Salvador stating that he has no criminal record there. Id., ECF No. 17-1 at 15-16.

writ doctrine bars this successive petition, and claimed that continued detention violates neither Petitioner's procedural nor substantive due process rights. ECF No. 5.

**II. Abuse of Writ Doctrine**

The abuse of the writ doctrine "forbids the reconsideration of claims that were or could have been raised in a prior habeas petition." Petrocelli v. Angelone, 248 F.3d 877, 884 (9th Cir. 2001). The doctrine may apply to successive habeas petitions challenging immigration detention. Alaimalo v. United States, 645 F.3d 1042, 1049 (9th Cir. 2011). A successive petition that raises identical grounds for relief as a prior petition must be dismissed unless the petitioner can show cause for bringing a successive petition and that prejudice would result, or that a fundamental miscarriage of justice would result from failure to entertain the claim. Id. Here, the successive petition does not raise identical grounds for relief as the prior petitions. The first petition alleged that prolonged detention without an individualized bond hearing violates due process. The instant petition also raises prolonged detention claims, but in a different manner – Petitioner is now arguing that removal is no longer reasonably foreseeable. He also asserts a substantive due process claim for the first time. See ECF No. 1 at 6 ("continued detention serves no legitimate purpose … The relevant question is whether detention remains reasonably related to the purpose of removal"). These issues could not have been raised in the first petition in the same manner that they are now raised. When Petitioner filed the first petition, he had been detained only seven months, as opposed to the current period of more than fifteen months, and the government had not yet significantly delayed the resolution of his immigration court case by failing to reschedule his hearing for seven months. The current petition should not be precluded as an abuse of the writ.

**III. Statutory Immigration Framework**

A judge of this court already found that § 1226(a) governs Petitioner's detention. Flores Martinez 1, ECF No. 20, 23. The undersigned will not disturb that finding.[4] Section 1226(a)

---

[4] Petitioner was stopped at the border and then paroled into the country before being re-detained. It is accordingly possible that his detention is governed by § 1225(b). See Jennings v. Rodriguez, 583 U.S. 281, 288 (2018) (noting that "when the purpose of the parole has been served, 'the [non-citizen] shall forthwith return or be returned to the custody from which he was paroled and

"provides the general process for arresting and detaining [noncitizens] who are present in the United States and eligible for removal." Rodriguez Diaz v. Garland, 53 F.4th 1189, 1196 (9th Cir. 2022). When a noncitizen is arrested and taken into immigration custody pursuant to § 1226(a), ICE makes an initial custody determination, including the setting of bond. See 8 C.F.R. § 236.1(c)(8). After this initial custody determination, the noncitizen may request a bond redetermination by an IJ. 8 C.F.R. § 236.1(d)(1). For each subsequent bond redetermination, the noncitizen's request may be considered "only upon a showing that the [noncitizen]'s circumstances have changed materially since the prior bond redetermination." 8 C.F.R. § 1003.19(e). The IJ's bond decision is appealable to the Board of Immigration Appeals ("BIA") pursuant to 8 C.F.R. § 1003.19(f).

**IV. Due Process Analysis**

The Due Process Clause "protects individuals against two types of government action: violations of substantive due process and procedural due process." United States v. Quintero, 995 F.3d 1044, 1051 (9th Cir. 2021) (internal quotation omitted). District Judge Thurston previously found that Petitioner's detention, which is governed by 8 U.S.C. § 1226(a), violated Petitioner's procedural due process rights in the absence of a hearing to determine whether such detention was justified. Despite Respondent's compliance with the Court's order for a hearing, Petitioner's ongoing, prolonged detention now raises substantive due process concerns. In weighing the multiple factors that inform substantive due process analysis, the undersigned concludes that Petitioner's detention has become excessive in relation to its regulatory purpose.

As a matter of substantive due process, governmental action may only infringe a fundamental right if "the infringement is narrowly tailored to serve a compelling state interest." Reno v. Flores, 507 U.S. 292, 302 (1993). "In the immigration context specifically, rights against arbitrary detention have been frequently vindicated through the Due Process Clause, in recognition that '[f]reedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that Clause protects.'" Padilla v. U.S.

---

thereafter his case shall continue to be dealt with in the same manner as that of any other applicant for admission to the United States.' [8 U.S.C. § 1182(d)(5).]").

Imm. and Customs Enforcement, -- F.4th --, 2026 WL 2822044, *19 (9th Cir. Sept. 21, 2026) ("Padilla II") (quoting Zadvydas v. Davis, 533 U.S. 678, 690 (2001)). "At the least, due process requires that the nature and duration of commitment bear some reasonable relation to the purpose for which the individual is committed." Jackson v. Indiana, 406 U.S. 715, 738 (1972). In the context of pretrial criminal detention, the Ninth Circuit has held that "[a] [substantive] due process violation occurs when detention becomes punitive rather than regulatory, meaning there is no regulatory purpose that can rationally be assigned to the detention or the detention appears excessive in relation to its regulatory purpose." United States v. Torres, 995 F.3d 695, 708 (9th Cir. 2021) (citing United States v. Salerno, 481 U.S. 739, 747 (1987)). In the immigration context, "[d]ue process protects against immigration detention that is not reasonably related to the legitimate purpose of effectuating removal or protecting against danger and flight risk." Padilla v. U.S. Imm. and Customs Enforcement, 704 F. Supp. 3d 1163, 1171-72 (W.D. Wash. 2023) ("Padilla I") (citing Zadvydas, 533 U.S. at 690-91);[5] see also Larios v. Wofford, No. 1:26- cv-1498 DJC CKD, 2026 WL 765019, at *5 (E.D. Cal. Mar. 18, 2026) (recognizing availability of substantive due process claims in the context of immigration detention).

Prolonged duration of detention alone does not constitute a due process violation, particularly where there are procedural protections to ensure that detention is reasonably related to a regulatory purpose. See Prieto-Romero v. Clark, 534 F.3d 1053, 1066 (9th Cir. 2008) (detention exceeding three years did not violate due process where a petitioner detained under § 1226(a) was able to avail himself of adequate procedural protections). Respondent asserts that

[5] In Padilla II, the Ninth Circuit affirmed two holdings made by the district court in Padilla I that had been certified for interlocutory appeal. Padilla II directly refutes one of Respondent's principal arguments: that Petitioner's due process rights concerning his *detention* go no further than those rights provided by statute. As Respondent contends, "under longstanding precedent, noncitizens who are not admitted into the United States have 'only those rights regarding admission that Congress has provided by statute,' and 'the Due Process Clause provides nothing more.'" ECF No. 5 at 9 (quoting Thuraissigiam v. Dep't of Homeland Security, 591 U.S. 103, 140 (2000)). But the Ninth Circuit distinguished due process rights as to detention from due process rights as to lawful admission, finding that "the government's strictly circumscribed detention authority, a pillar of our common law tradition for almost a millennium, stands in contrast to the political branch's 'plenary authority to decide which aliens to admit.'" Thuraissigiam, 591 U.S. at 139 … . Thuraissigiam was an admission, not a detention, case." Padilla II, 2026 WL 2822044, *19.

Petitioner has been provided all the process due to him under §1226(a). Indeed, in Rodriguez Diaz, the Ninth Circuit held that, in cases of prolonged § 1226(a) detention, procedural due process generally does not require an additional bond hearing at which the government bears the burden of proof. The Ninth Circuit did not, however, foreclose all as-applied challenges to detention under § 1226(a); nor did it address whether those protections foreclose a noncitizen's claim of a *substantive* due process violation. Rodriguez Diaz , 53 F.3d at 1213.

In examining whether detention has become excessive in relation to it regulatory purpose, despite existing procedural protections, cases involving pre-trial criminal detention are instructive. Immigration detention statutes bear some resemblance to the Bail Reform Act. Both statutory schemes aim to ensure appearance at subsequent proceedings and protect the community from danger, and both have been upheld as facially constitutional.[6] Doe v. Becerra, 723 F.Supp.3d 688, 692 (N.D. Cal. 2024) ("Doe v. Becerra I"). When the Supreme Court upheld the Bail Reform Act against a substantive due process challenge, it did so while expressing "no view as to the point at which detention in a particular case might become excessively prolonged, and therefore punitive, in relation to Congress' regulatory goal." United States v. Salerno, 481 U.S. 739, 748 n.4 (1987). In Torres, the Ninth Circuit grappled with the due process implications of a prolonged pre-trial detention period. While finding that the Speedy Trial Act did not require the petitioner's release, the Court acknowledged that the Speedy Trial Act "is not foolproof protection against prolonged pretrial detention" and that in some situations "the length of the defendant's pretrial detention might not survive a proper due process challenge." Torres, 995 F.3d 695, 708 (citing United States v. Accetturo, 783 F.2d 382, 387-88 (3d Cir. 1986)). To determine whether prolonged detention had become punitive, the Court weighed the length of detention against two additional factors: the prosecution's contribution to the delay and the evidence supporting detention. Torres, 995 F.3d at 708. Notably, it did not consider the amount

[6] Doe v. Becerra I involved mandatory detention pursuant to 8 U.S.C. § 1226(c). The Doe court noted an additional similarity between §1226(c) detention and the Bail Reform Act: that both statutes limit presumptive detention to people accused or convicted of certain serious crimes. 723 F.Supp.3d 688, 692. Though § 1226(a) does not share that similarity, it bears an additional similarity to the Bail Reform Act not applicable to § 1226(c): both the Bail Reform Act and §1226(a) provide for a form of custody determination hearing.

of process Mr. Torres had already received, including a bail hearing, a detention review hearing, reconsideration of the district court's denial, and district court review of a motion for release. Id. at 700-701.

Analogizing the above-referenced Bail Reform Act cases to immigration detention, "even when a statute that requires detention is regulatory in nature, the question of whether a particular person's detention remains warranted over time always requires balancing the burden on their liberty imposed by detention with the regulatory goals of the statute." Doe v. Becerra I, 723 F.Supp.3d. at 691. Civil detainees, similar to pre-trial detainees, cannot be subjected to conditions that amount to punishment. Doe v. Becerra, 732 F. Supp. 3d 1071, 1079 (N.D. Cal. 2024) ("Doe v. Becerra II"). Thus, the following five-factor balancing test is used to evaluate whether a particular individual's ongoing immigration detention violates substantive due process: (1) the length of detention and whether it is excessive in relation to its regulatory purpose; (2) the government's contribution to any delay; (3) the evidence supporting the determination that detention is warranted to prevent flight risk or community danger; (4) whether the government interests in ensuring appearance at future proceedings and protecting the community could be protected through alternatives to detention that are less harsh; and (5) the conditions of detention and how they compare to conditions under which pretrial criminal detainees or people convicted of crimes are held. See Doe v. Becerra II, 732 F. Supp. 3d 1071, 1080 (N.D. Cal. 2024). This multi-factor test does not usurp statutory procedural protections meant to ensure that detention is warranted, but rather provides a mechanism to determine when civil immigration detention has crossed the "outer bounds on both the duration and conditions" that due process imposes.[7] Id. at 1080.

////

---

[7] The undersigned has elsewhere recognized that this "substantive due process framework is best suited to mandatory detention schemes that, unlike § 1226(a), lack meaningful procedural protections as detention becomes prolonged." Silva Villicana v. Warden, No. 1:26-cv-2509 DC SCR, 2026 WL 1816155, *5 (E.D. Cal. June 24, 2026) (Findings & Recommendations). However, that case involved a statutory basis on which to adjudicate the petition, rendering constitutional analysis unnecessary, and where the petitioner did not "meaningfully develop[]" earlier allegations relevant to the substantive due process analysis. Id. at *5 and n.6.

**A. Length of Detention**

"[A]t some point, [civil] detention can 'become excessively prolonged, and therefore punitive,' resulting in a due process violation." Torres, 995 F.3d at 708 (quoting Salerno, 481 U.S. at 747 n.4). "But while the existence of some threshold of per se due process violation may be 'undisputed,' . . . it has also never been clearly delineated in the context of immigration detention." Doe v. Becerra, 704 F. Supp. 3d 1006, 1020 (N.D. Cal. 2023). The Supreme Court deemed six months the presumptive limit of reasonable detention under § 1231(a)(6). Zadvydas v. Davis, 533 U.S. 678 (2001). In Demore v. Kim, 538 U.S. 510 (2003) the Supreme Court upheld the facial constitutionality of mandatory detention under § 1226(c), but with the understanding that § 1226(c) detention is relatively "brief" and "limited," and "lasts roughly a month and a half in the vast majority of cases" and "about five months in the minority of cases in which the [noncitizen] chooses to appeal." Id. at 513, 529 n.12, 530. Conversely, in Jennings v. Rodriguez, 538 U.S. 281 (2018), the Supreme Court found no implicit six-month limit on length of detention. These cases show that Petitioner's fifteen months of detention qualify as prolonged and may therefore warrant additional constitutional scrutiny, relative to a shorter period of detention.

To determine whether detention has violated substantive due process rights, courts in this and other districts have analogized immigration detention to pre-trial detention in formulating a test to weigh the length of detention against its regulatory purpose:

> Ultimately, though, whether this prolonged detention is *excessive* and therefore punitive is a relative question. The duration of detention itself must be weighed against . . . the regulatory purposes for detention—preventing flight risk and protecting public safety. Whether the duration of detention is excessive depends in part on the degree of those risks and the extent to which [the petitioner's] detention mitigates them.

Doe v. Becerra II, 732 F. Supp. 3d at 1083 (emphasis in original); see also Torres, 995 F.3d at 708 ("The point at which detention constitutes a due process violation requires a case-by-case analysis.").

////

Petitioner's detention has lasted more than fifteen months, which is undoubtedly prolonged. See Chen v. Aitken, 917 F. Supp. 2d 1013, 1018 (N.D. Cal. 2013) (holding Petitioner's seven month detention under § 1225(b) was "prolonged" because it "has lasted well beyond the typical period described in Demore" and "neither release nor removal are imminent"). The pending appeal to the BIA suggests that Petitioner "faces an undetermined, but likely significant, period of mandatory detention through the appeals process." Gao v. LaRose, 805 F. Supp. 3d 1106, 1111 (S.D. Cal. 2025). But while prolonged, the fifteen-month duration of Petitioner's detention, standing alone, may not violate substantive due process. See Torres, 995 F.3d at 699. However, Petitioner has offered evidence that this duration is excessive in relation to its regulatory purpose, in that Petitioner is not a danger to the community, any flight risk he poses can be mitigated by alternatives to detention, and the conditions of confinement are no less restrictive than that of criminal incarceration.

**B. Government Contribution to Delay**

Relevant to this analysis is the parties' responsibility for "delays that have contributed to the duration of detention." Doe v. Becerra II, 732 F. Supp. 3d at 1083; see also United States v. Gelfuso, 838 F.2d 358, 359 (9th Cir. 1988) (the due process limit on the length of pretrial detention requires consideration of "the length of confinement in conjunction with the extent to which the prosecution bears responsibility for the delay that has ensued"). Both parties bear some responsibility for the prolonged duration of Petitioner's detention, but the government bears significantly more responsibility. Petitioner received one continuance in July 2025 to contest the charge of removability. When Petitioner appeared on November 14, 2025, the immigration court continued Petitioner's scheduled removal hearing "on its own motion" due to "lack of time." ECF No. 16 at 12. The immigration court then failed to reschedule the hearing *for over seven months* because of "immigration judge reassignment." Id. While the Petitioner-caused delay was a result of Petitioner exercising his right to contest the charge against him, the government-caused delay was apparently due to poor docket administration. The undersigned therefore attributes the seven-month period of detention between the November 14, 2025 hearing and the final removal hearing on June 16, 2026 to delays caused by the government.

**C. Evidence of Flight Risk and Danger**

Determining whether Petitioner's prolonged detention has become punitive requires consideration of the extent to which it serves its regulatory purposes of preventing flight and danger to the community. "This inquiry requires evaluating the degree to which [Petitioner] poses a flight risk or danger, which in turn requires the Court to consider the evidence related to those risks." Doe v. Becerra II, 732 F. Supp. 3d at 1086.

The record does not demonstrate – and no IJ has found – that Petitioner presents a danger to the community. Petitioner's only criminal arrest did not result in any charges. Flores Martinez I, ECF No. 17-1 at 11-14. No evidence supports the FBI's description of Petitioner as a subject of interest or the allegations of drug trafficking and gang affiliation. The RAP sheet itself cautions that "no law enforcement action should be taken based only on the information provided herein" (Flores Martinez I, ECF No. 31-3, at 7), and Petitioner's Criminal Record Certificate (id., ECF No. 17-1 at 15-16) refutes any allegations of criminal charges in El Salvador.

As to risk of flight, the factors set forth in Matter of Guerra, 24 I.&N. Dec. 37, 40-41 (BIA 2006) (listing the factors an IJ may consider in determining whether a noncitizen merits release from custody) are instructive. The factors relating to risk of flight include: whether the noncitizen has a fixed address in the United States; length of residence in the United States; family ties to the United States and whether they may entitle the noncitizen to reside permanently in the United States in the future; employment history; record of appearance in court; history of immigration violations; any attempts to flee prosecution or otherwise escape from authorities; and the manner of entry to the United States. Id.

Under these factors, Petitioner presents minimal risk of flight. In seeking entry to the United States, Petitioner abided by the "remain in Mexico" policy and appeared for all scheduled hearings. After his initial release on parole, Petitioner lived and worked in the United States for five years, residing with his wife and two U.S. citizen children. Respondent claims Petitioner had "multiple ATD violations" including two missed check-ins (ECF No. 5 at 2, 24), but Petitioner disputes that claim. Notably, ICE arrested Petitioner when he appeared at an ICE check-in on June 20, 2025; they did not pursue arrest after either of the alleged missed appointments in

September 2023 and May 2024. While an arrest warrant in El Salvador could suggest a motive for Petitioner to abscond if he becomes subject to a final order of removal, no such warrant is documented; the record contains only unsubstantiated suspicions. Petitioner's fear of return to El Salvador could, however, provide a motive to abscond. Most of the Guerra factors therefore point towards Petitioner not posing a meaningful risk of flight.

The Court is cognizant that an IJ determined that Petitioner poses a risk of flight. The Court is not reviewing that decision here. See 8 U.S.C. §1226(e) (prohibiting a federal court from reviewing a discretionary detention decision made by an IJ). Nor does the IJ's bond decision bind this Court in the context of the substantive due process analysis undertaken here.

"The question is not whether … release is appropriate as a matter of discretion, but whether the duration of [Petitioner's] detention has become excessively prolonged given the government's interests and the conditions of confinement. This inquiry requires evaluating the degree to which [Petitioner] poses a flight risk or danger, which in turn requires the Court to consider the evidence related to those risks." Doe v. Becerra II, 732 F. Supp. 3d at 1086. Here, Respondent notes the IJ's "determination that detention is warranted to prevent flight risk," ECF No. 5 at 7, but does not otherwise argue how evaluation of the Guerra factors or any other factors would demonstrate Petitioner to present a meaningful risk of flight. As in Doe v. Becerra II, the IJ's determination that Petitioner presents a flight risk "centers on the procedural posture and predicted outcomes of his pending proceedings." 732 F. Supp. 3d at 1087 ("The immigration judge determined that Mr. Doe would pose a flight risk if released because his conviction makes him ineligible for many forms of relief, because his Convention Against Torture claim requires a high standard of proof, and because his appeal of his removal order was dismissed."). As explained above, most of the Guerra factors weigh in Petitioner's favor. Moreover, "[e]ven assuming the immigration judge is correct in his predictions about the likelihood that [Petitioner] will obtain the relief he is seeking, however, the real question"—on this substantive due process analysis—"is whether Mr. Doe poses a flight risk that cannot be mitigated." Id. As explained below, there are available alternatives that would mitigate any risk.

**D. Alternatives to Detention**

Relevant to assessing dangerousness and flight risk is whether the government's interests in protecting the community and ensuring appearances for immigration proceedings could be protected through alternatives to detention that are less restrictive. Doe v. Becerra II, 732 F. Supp 3d at 1080.

To the extent Petitioner poses a flight risk, there are routine and obvious conditions that ICE could impose, including check-ins with ICE officials and electronic monitoring. ICE's Intensive Supervision Appearance Program (ISAP) offers alternatives to detention such as GPS tracking, a smartphone app, and reporting by telephone. See Doe v. Chestnut, 810 F. Supp. 3d at 1198, citing ICE, Alternatives to Detention, perma.cc/384H-HCLY. These alternatives to detention are specifically designed to mitigate flight, and ICE's own data shows that the vast majority of participants comply with the programs' requirements. Id. The availability of these alternatives to detention –and Petitioner's demonstrated ability and willingness to comply with them – greatly reduces the government's interest in detention for the purported purpose of mitigating flight risk.

**E. Conditions of Detention**

Substantive due process also imposes outer bounds on the conditions of civil immigration detention. Doe v. Becerra II, 732 F. Supp. 3d at 1080; Jones v. Blanas, 393 F.3d 918, 932 (9th Cir. 2004) ("[W]hen a [civil] detainee is confined in conditions identical to, similar to, or more restrictive than, those in which his criminal counterparts are held, we presume that the detainee is being subjected to 'punishment.'").

Petitioner did not make specific allegations regarding conditions at the California City detention facility (hereinafter "CCDF"), but the undersigned takes judicial notice of this and other courts' findings that that conditions at CCDF are "not only inherently harsh but also worse than the conditions […] in state prison. Doe v. Chestnut, 810 F. Supp. 3d at 1201 (citing Doe v. Beccera II, 732 F. Supp. 3d at 1089). In a class action against ICE alleging that conditions of confinement at CCDF violated noncitizen detainees' First and Fifth Amendment rights, Judge Chesney of the Northern District of California found that "it is not safe to be sick" at CCDF.

Gomez Ruiz v. U.S. Immigration and Customs Enforcement, 3:25-cv-09757-MMC, 2026 WL 851980, at *3 (N.D. Cal. March 27, 2026). An expert investigation into the healthcare available at CCDF "revealed multiple instances of 'poor clinical judgment,' inadequate recordkeeping, and treatment that failed to comport with the prevailing standard of care." Id. See also Tigranyan v. Warden of California City Det., No. 1:25-CV-01554-DJC-SCR, 2026 WL 91765, at *6 (E.D. Cal. Jan. 13, 2026) (noting investigation and report by Disability Rights California finding that CCDF fails to provide necessary medical and mental health care and fails to other meet basic needs), report and recommendation adopted, No. 1:25-CV-01554-DJC-SCR, 2026 WL 130843 (E.D. Cal. Jan. 16, 2026). Detainees at CCDF are given at most one hour per day of outdoor recreation time, which is "less than prisoners in segregation are offered." Gomez Ruiz, 2026 WL 851980, at *5. Daily counts and insufficient staffing at CCDF make it impracticable for attorneys to visit detainees as often as they typically would, and the no-contact nature of the visits "constitute[e] restrictive conditions under which attorneys have difficulty hearing and speaking to their clients." Gomez Ruiz, 2026 WL 851980, at *5. Additionally, conditions at CCDF have been described as "abysmal," with "frigid" temperatures and water that "tast[ed] like bleach or detergent." Kaur v. United States Dep't of Homeland Sec., 813 F. Supp. 3d 1167, 1172 (E.D. Cal. 2025). While prisons routinely provide sweatshirts and sweatpants to inmates free of charge, CCDF does not do so for their immigrant detainees. Gomez Ruiz, 2026 WL 851980, at *8. As another judge has noted, conditions at CCDF "are both excessive in relation to any non-punitive purpose and employed to achieve objectives that could be achieved by other, less harsh methods." Id.

**F. Conclusion as to Substantive Due Process Analysis**

On balance, Petitioner has established that his detention is excessive in relation to its regulatory purpose**.** Petitioner has spent well over a year confined in conditions found to be more restrictive than criminal confinement, with the government responsible for seven months of delay in Petitioner's removal proceedings, despite the availability of post-release monitoring that could mitigate any risk of flight Petitioner presents. Accordingly, the undersigned finds that Petitioner's detention has become excessive in relation to its purpose and recommends that the petition be granted.

**V. Remedy**

The undersigned next turns to the appropriate remedy:

> Federal habeas corpus practice, as reflected by the decisions of [the Supreme] Court, indicates that a court has broad discretion in conditioning a judgment granting habeas relief. Federal courts are authorized, under 28 U.S.C. § 2243, to dispose of habeas corpus matters 'as law and justice require.'" Hilton v. Braunskill, 481 U.S. 770, 775 [] (1987). "[H]abeas corpus is, at its core, an equitable remedy." Schlup v. Delo, 513 U.S. 298, 319[] (1995). "Moreover, in constitutional adjudication as elsewhere, equitable remedies are a special blend of what is necessary, what is fair, and what is workable." Lemon v. Kurtzman, 411 U.S. 192, 200 [] (1973) (footnote omitted).

Doe v. Chestnut, 810 F. Supp. 3d at 1202. The appropriate remedy for this violation of substantive due process is release, but with safeguards to mitigate flight risk. See id. (ordering release with "appropriate conditions so that the government's significant interests in ensuring Petitioner's appearance at future proceedings, protecting the community, and that, if ordered removed, Petitioner will be successfully removed, are protected."); Zadvydas, 533 U.S. at 700 ("[T]he [noncitizen]'s release may and should be conditioned on any of the various forms of supervised release that are appropriate in the circumstances, and the [noncitizen] may no doubt be returned to custody upon a violation of those conditions.").

**VI. Conclusion**

Accordingly, IT IS HEREBY RECOMMENDED that:

1. Petitioner's petition for writ of habeas corpus be GRANTED as follows:
    a. Respondent shall IMMEDIATELY RELEASE Petitioner Jonathan Ernesto Flores Martinez (A# 203-599-284) from custody. At the time of release, Respondent must return all of Petitioner's documents and possessions;
    b. Upon Petitioner's release, Respondent shall enroll Petitioner in ICE's Intensive Supervision Appearance Program (ISAP) and impose its standard flight-mitigation conditions.
2. The Clerk be directed to:
    a. Serve the California City Immigration Processing Center with a copy of this Order; and
    b. Enter judgment in Petitioner's favor and close the case.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within **seven days** after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. The undersigned finds that a shortened objection period is warranted in this case given the nature of the relief at issue as well as the fact that the parties have had sufficient time to submit all of their arguments in written briefs. See United States v. Barney, 568 F.2d 134, 136 (9th Cir. 1978) (per curiam) (stating that 28 U.S.C. § 636(b)(1) sets the maximum objection period and not the minimum); see also Local Rule 304(b). The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: September 29, 2026

SEAN C. RIORDAN
UNITED STATES MAGISTRATE JUDGE